## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 16 2016, 8:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Thomas C. Allen
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Razi S. Razi,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

November 16, 2016

Court of Appeals Case No.
02A03-1601-CR-103

Appeal from the Allen Superior Court.
The Honorable John F. Surbeck, Jr., Judge.
Cause No. 02D06-1505-FA-9

**Barteau, Senior Judge**

# Statement of the Case

[1] Razi S. Razi appeals his convictions of child molesting as a Class A felony[1] and child molesting as a Class C felony.[2] We affirm.

# Issue

[2] The sole issue on appeal is whether the State presented sufficient evidence to support Razi's convictions.

# Facts and Procedural History

[3] The facts most favorable to the verdict follow. Razi and John were friends before coming to this country. Razi came to the United States a few years before John, and, after John and his family arrived here, they reconnected with Razi in Fort Wayne. The men and their families spent a lot of time together, and John and his children even lived with Razi and his family while they were in the process of obtaining housing. John considered Razi to be a member of his family and gave Razi a key to his house. M.M. is John's daughter.

[4] In 2009, when M.M. was nine years old, she fell asleep on the couch watching a movie with Razi, who was visiting. M.M. later awoke in pain to find Razi underneath her with his penis inserted into her vagina.

---

[1] Ind. Code § 35-42-4-3(a) (2007).

[2] Ind. Code § 35-42-4-3(b).

[5] A few years later when M.M. was in the seventh grade, she was at home sitting on the couch watching a movie. Razi came to the house, approached M.M., and touched her breasts, exclaiming that her breasts were "so soft." Tr. p. 203. M.M. slapped Razi's hand. When Razi attempted to touch M.M.'s breasts again, she got up from the couch and went to her room.

[6] In December 2014, people were gathered at John's home to celebrate the birth of another daughter. Razi was one of the guests at this celebration. M.M. was in the kitchen washing dishes, and her older sister, Anjelani, was sitting at the kitchen table. Razi came into the kitchen, slapped M.M.'s "left booty," and said to M.M., "when can I f*** you again?" *Id.* at 214. At trial, Anjelani testified that she witnessed Razi touch M.M. "behind her thigh" and say, "when am I going to be able to tap that again?" *Id.* at 279.

[7] Following this incident, M.M. told her basketball coach about the 2009 and 2014 incidents, and an investigation was launched. As a result of the investigation, Razi was charged with one count of child molesting as a Class A felony, one count of child molesting as a Class C felony, and one count of child solicitation as a Level 5 felony.[3] Following a jury trial, Razi was found guilty of all charges. The trial court merged the Class C felony child molesting into the Class A felony child molesting and sentenced Razi to an aggregate sentence of

---

[3] Ind. Code § 35-42-4-6 (2014).

thirty-three years.  On appeal, Razi's only challenge is to his convictions for child molesting.

## Discussion and Decision

[8] Razi contends that the record does not reveal substantial evidence of probative value of his guilt, specifically challenging M.M.'s credibility.  When we review a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of the witnesses.  *Sandleben v. State*, 29 N.E.3d 126, 131 (Ind. Ct. App. 2015), *trans. denied*.  Instead, we consider only the evidence most favorable to the verdict and any reasonable inferences drawn therefrom.  *Id.*  If there is substantial evidence of probative value from which a reasonable fact-finder could have found the defendant guilty beyond a reasonable doubt, the verdict will not be disturbed.  *Labarr v. State*, 36 N.E.3d 501, 502 (Ind. Ct. App. 2015).

[9] Here, in order to obtain a conviction for child molesting as a Class A felony, the State must have proved beyond a reasonable doubt that (1) Razi, a person at least twenty-one years of age, (2) with M.M., a child under fourteen years of age, (3) performed or submitted to sexual intercourse.  *See* Ind. Code § 35-42-4-3(a); Appellant's App. p. 114.  In addition, to establish the offense of child molesting as a Class C felony in this case, the State must have proved beyond a reasonable doubt that (1) Razi (2) with M.M., a child under fourteen years of age, (3) performed or submitted to fondling or touching of M.M. (4) with the

intent to arouse or satisfy the sexual desires of either M.M. or Razi. *See* Ind. Code § 35-42-4-3(b); Appellant's App. p. 116.

[10] The evidence at trial established that in 2009 M.M. was nine years old, and Razi was twenty-six or twenty-seven years old. At that time, Razi began to give M.M. special attention that he did not give to M.M.'s sisters. M.M., who was fifteen at the time of trial, testified that Razi would call her "his girlfriend" and buy her presents such as flowers and a ring that he told her was a promise ring. Tr. p. 186.

[11] M.M. further testified regarding a night in 2009 when she was having a sleepover with a few friends. Razi came to the house with a movie that he wanted them to watch with him. M.M. and one of her friends began watching the movie with Razi, and M.M.'s friend fell asleep. M.M. woke her friend and sent her upstairs to bed. M.M. continued to watch the movie but later fell asleep on the couch on her stomach. At some point, M.M. felt someone get underneath her and felt her pants coming off. She then felt something "go inside" her, and she woke up because she "felt so much pain." *Id.* at 191, 196. M.M. clarified that the pain was caused by Razi putting his penis in her vagina. Razi told M.M. to "shhh" and tried to put his penis further inside her, but the pain increased so M.M. got up and went upstairs to bed because she did not know what to do. *Id.* at 192.

[12] M.M. testified that when she awoke the next morning there was blood on her sheets and on her body on her "front area." *Id.* at 199. She showered, rinsed

her sheets and hung them up, and put clean sheets on her bed.  It was at this point that M.M. said she "didn't know what to do" and that she "was starting to freak out" and that she "felt like [she] couldn't say anything to nobody." *Id.* at 200.  Later, M.M. told Anjelani that there had been an incident with Razi but that she was not to tell anyone.

[13]    The jury also heard and saw M.M. testify as to the incidents when she was in seventh grade watching a movie at home and when she was washing dishes in December 2014.  Anjelani testified that after Razi accosted M.M. in the kitchen in December 2014, M.M. asked Anjelani to stay close to her so that Anjelani could watch her and see what was really going on because M.M. felt intimidated by Razi.

[14]    Additionally, M.M. testified that after the December 2014 incident she began having flashbacks of the 2009 incident.  She stated that she was unable to focus on her schoolwork or on basketball and that things were building up inside of her until she could no longer hold it in.  At that point, M.M. spoke to her basketball coach about the incidents of 2009 and 2014.  In doing so, M.M. was upset and crying and told her coach that her parents already knew of the incidents because she did not want the coach to tell her parents.  She testified that she just needed to tell someone because she could not keep it to herself any longer.  M.M.'s basketball coach informed school officials who called child protective services (CPS).  When CPS first interviewed M.M., she denied everything because she did not want to upset her dad or cause problems in her dad's relationship with Razi.  At some point, John was informed of the

allegations, and, during a meeting at school with John, M.M., and school officials, M.M. eventually admitted to John that Razi had molested her. At a second CPS interview, M.M. again stated that Razi had molested her.

[15] Based upon her allegations, M.M. was examined by a sexual assault nurse examiner (SANE). However, because it had been several years since the molestation, no evidence was collected and no injuries were found. The SANE testified that the fact that M.M.'s exam results were normal did not mean M.M. was not being truthful about the incident. She explained that although M.M. stated she had bleeding at the time of the event, the female sex organ is a mucus membrane that heals very quickly. She further testified that ninety to ninety-five percent of pediatric patients have normal genital exams.

[16] In addition, Detective Pfeiffer, a detective specializing in child sexual assault and abuse cases for the Fort Wayne Police Department, investigated the case. Detective Pfeiffer testified that it is uncommon for a child to disclose abuse immediately and that some children never tell while others wait days, weeks, or even years to tell. Detective Pfeiffer also stated that disclosure of child sexual assault is best described as a "process" that can be "bumpy." *Id.* at 368.

[17] The gist of Razi's argument is that M.M.'s testimony is not believable because "[i]t is not probable" that a nine-year-old would suffer an injury that caused her genitalia to bleed and not tell her parents; the acts of hiding her injuries and cleaning her bedding are "highly inconsistent with a 9-year-old child's mental capabilities;" no one testified to seeing M.M. clean her sheets or saw them

drying; no one testified to noticing a change in M.M.'s behavior toward Razi; M.M. denied the incident to school officials and CPS; and the lack of scarring or genitalia injury supports Razi's claim of innocence. Appellant's Br. pp. 10, 11.

[18] Razi's claims are merely a request for us to reweigh the evidence and judge the credibility of the witnesses, which we will not do. *See Sandleben*, 29 N.E.3d at 131. Moreover, we are mindful that the trier of fact is entitled to determine which version of the incident to credit, *Schmid v. State*, 804 N.E.2d 174, 179 (Ind. Ct. App. 2004), *trans. denied*, and a conviction for child molesting may rest solely upon the uncorroborated testimony of the victim. *Rose v. State*, 36 N.E.3d 1055, 1061 (Ind. Ct. App. 2015). The evidence here was sufficient to establish, beyond a reasonable doubt, that Razi committed the offenses of child molesting.

# Conclusion

[19] For the reasons stated, we conclude that the State presented sufficient evidence to support Razi's convictions of child molesting, as a Class A felony, and child molesting, as a Class C felony.

[20] Affirmed.

Crone, J., and Bradford, J., concur.