## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 25 2018, 9:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Rory Gallagher
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Candice Scarbrough,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | July 25, 2018<br><br>Court of Appeals Case No.<br>18A-CR-2<br><br>Appeal from the Marion Superior Court<br><br>The Honorable David Hooper, Magistrate<br><br>Trial Court Cause No.<br>49G12-1610-CM-39839 |

**Bailey, Judge.**

# Case Summary

Candice Scarbrough ("Scarbrough") appeals her conviction, following a bench trial, for operating a vehicle while intoxicated endangering a person, a Class A misdemeanor.[1] On appeal she raises the sole issue of whether the State presented sufficient evidence to support her conviction.

We affirm.

# Facts and Procedural History

The facts most favorable to the judgment are as follows. On October 8, 2016, at approximately 9:22 p.m., Officer Lance Rector ("Officer Rector") of the Indianapolis Metropolitan Police Department was on patrol when he was dispatched to the area of South Madison Avenue to investigate a report of a potentially impaired driver. Appellant's App. at 16. Officer Rector, who had been an Indianapolis police officer since 2004, became a drug recognition expert ("DRE") through the International Association of Chiefs of Police ("IACP"), and in 2003, he was made an instructor for the IACP's DRE program. Between 2013 and 2015, Officer Rector attended nursing school at Ivy Tech Community College in Columbus, Indiana, where he was educated in

---

[1] Ind. Code § 9-30-5-2.

pharmacology. He also participated in continuing education on different types of drugs and the classifications of pharmacology.

[4] On receiving the dispatch, Officer Rector drove to the area, where he saw a truck that had stopped in the middle of the traveled part of South Madison Avenue. Officer Rector approached the truck, which was "in gear" with the engine running, but it was not moving. Tr. at 6. He saw Scarbrough sitting behind the wheel, slumped forward onto the steering wheel. No one else was in the vehicle. Scarbrough did not respond to Officer Rector's verbal commands and, when Officer Rector shook her, she remained unconscious and slumped to one side. Officer Rector placed the truck in park and turned off the engine. He saw that Scarbrough was not breathing normally, and "[h]er respiratory rate was almost non-existent, like one to two breaths per minute." Id. at 7. Officer Rector administered a sternum rub to Scarbrough to rouse her; however, she did not respond.

[5] Officer Rector removed Scarbrough from the truck and carried her to a grassy area on the side of the road. After he laid Scarbrough on the ground, Officer Rector "reassessed her breathing rate and at that time she was extremely hypoxic. Her oxygen levels were so low that her lips were starting to turn blue." Id. at 8. Officer Rector opened one of Scarbrough's eyes and found that her pupil was, "extremely pinpoint, which is a main indicator of a narcotic analgesic classification of a drug ingestion." Id. From his education and training, Officer Rector recalled that narcotics are "unique because it's [sic] the only drug that will cause constriction of the pupils." Id. at 8-9. Officer Rector

explained at trial that narcotic drugs also suppress respiration, which can cause respiratory arrest.

[6] Officer Rector went to his police cruiser and obtained a nasal-mist applicator of Naloxone, which is the antidote for a narcotic overdose. He injected Scarbrough's nostril with one nasal mist dose of Naloxone and observed her response. After approximately ten minutes, Scarbrough's low rate of breathing had not changed. Officer Rector then asked another officer who had responded for his Naloxone applicator. Officer Rector explained at trial that it was not uncommon to administer more than one dose of Naloxone, due to the strength of the narcotics and the delivery of the dose through a nasal mist rather than an IV.

[7] Officer Rector provided a second administration of Naloxone to Scarbrough and, approximately three to four minutes later, Scarbrough regained consciousness. She was placed on a gurney for transportation by ambulance to the hospital. Officer Rector testified that, upon arrival at the hospital, Scarbrough was sitting up in the gurney, talking, and "appeared to be normal and perfectly fine." *Id*. at 9-10. Scarbrough was taken to the hospital's prisoner holding area where Indiana's implied-consent warning was read to her. She declined to participate in a chemical test.

[8] On October 9, 2016, the State charged Scarbrough with one count of operating a vehicle while intoxicated endangering a person, a Class A misdemeanor. Following an August 30, 2017, bench trial at which Officer Rector was the sole

witness, the court found Scarbrough guilty as charged. On December 6, the trial court sentenced Scarbrough to 365 days of incarceration, with five days executed, 360 days suspended, and 360 days of probation. This appeal ensued.

# Discussion and Decision

[9] Scarbrough challenges the sufficiency of the evidence to support her conviction for operating a vehicle while intoxicated endangering a person, a Class A misdemeanor. Our standard of review of the sufficiency of the evidence is well-settled:

> When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.* We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id.*

*Clemons v. State*, 996 N.E.2d 1282, 1285 (Ind. Ct. App. 2013), *trans. denied*. Moreover, "[a] conviction may be based on circumstantial evidence alone so long as there are reasonable inferences enabling the factfinder to find the defendant guilty beyond a reasonable doubt." *Lawrence v. State*, 959 N.E.2d 385, 388 (Ind. Ct. App. 2012) (citation omitted), *trans. denied*.

[10] To support Scarbrough's conviction for operating a vehicle while intoxicated as a Class A misdemeanor, the State must prove that Scarbrough operated a

vehicle, while she was intoxicated, and in a manner that "endangers a person." I.C. § 9-30-5-2. First, Scarbrough admits that there was "strong evidence that she operated the truck shortly before [Officer Rector] arrived." Appellant's Br. at 10. And the evidence indicated that she was the only person in the driver's seat of a vehicle that was stopped, but still running, in the middle of the traveled part of a road. From that evidence, the fact-finder could reasonably infer that Scarbrough drove the vehicle, stopped it, and passed out in the travel lane of the road. That is sufficient evidence that Scarbrough "operated a vehicle." *Id*.; *see also Mordacq v. State*, 585 N.E.2d 22, 24 (Ind. Ct. App. 1992) (listing cases where defendants have been held to be operating vehicles when found at the wheel of a car with its engine running, including cases where the car was: on the median strip of a four-lane highway, *Bowlin v. State*, 330 N.E.2d 353 (1975); stopped at an intersection, with the defendant asleep, *Rose v. State*, 345 N.E.2d 257 (1976); and, stopped in a lane of traffic on a county road, with the defendant asleep, *Traxler v. State*, 538 N.E.2d 268 (1989)).

[11] Second, Scarbrough challenges the sufficiency of the evidence she was intoxicated. "Intoxicated" is defined, in relevant part, as being "under the influence of … a controlled substance … so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties." I.C. § 9-13-2-86. This court has consistently held that "[p]roof of intoxication does not require proof of blood alcohol content; it is sufficient to show that the defendant was impaired." *Gatewood v. State*, 921 N.E.2d 45, 48 (Ind. Ct. App. 2010) (citing *Ballinger v. State*, 717 N.E.2d 939, 943 (Ind. Ct. App. 1999)), *trans.*

*denied*. And "impaired," within the meaning of this statute, "is established by certain behaviors and traits evincing impairment," such as impaired attention and reflexes. *Curtis v. State*, 937 N.E.2d 868, 873 (Ind. Ct. App. 2010) (citing *Gatewood*, 921 N.E.2d at 48). Moreover, impairment may be shown by reasonable inferences drawn from the evidence. *Tin Thang v. State*, 10 N.E.3d 1256, 1260 (Ind. 2014).

[12] Here, there was sufficient evidence that Scarbrough was intoxicated. Officer Rector, who has training and experience in drug recognition, testified that he found Scarbrough unconscious behind the wheel of a truck that was still running. On further examination, he found that Scarbrough's respiration was suppressed to the point that her lips were starting to turn blue. Officer Rector testified that suppressed respiration is a symptom of narcotic drug use. In addition, he testified that he examined Scarbrough's eyes and found that her pupils were constricted, which is a unique indicator of narcotic ingestion. And Scarbrough regained consciousness only after receiving a second dose of Naloxone, the antidote for a narcotic overdose. From this evidence, it was reasonable for the trial court to infer that Scarbrough was impaired as a result of the use of a narcotic drug; i.e., she was intoxicated. I.C. § 9-13-2-86. Scarbrough's contentions to the contrary are merely requests that we reweigh the evidence, which we will not do. *Clemons*, 996 N.E.2d at 1285.

[13] Finally, Scarbrough asserts that the State failed to provide sufficient evidence that she operated the vehicle in a manner that endangered anyone. To prove endangerment, the State must provide evidence beyond mere intoxication.

*Sesay v. State*, 5 N.E.3d 478, 484 (Ind. Ct. App. 2014), *trans. denied*. Rather, the State must prove that "the defendant was operating the vehicle in a condition or manner that could have endangered any person, including the public, police, or the defendant." *Staten v. State*, 946 N.E.2d 80, 84 (Ind. Ct. App. 2011), *trans. denied*. Thus, in *Labarr v. State*, 36 N.E.3d 501, 503 (Ind. Ct. App. 2015), for example, we held that the State proved the defendant endangered himself with evidence that the defendant was unconscious in a minivan parked on a public street near a busy bar, leaving him "vulnerable to injuries resulting from traffic accidents, falling down, and being victimized by passersby."

[14] Here, the State presented sufficient evidence that Scarbrough endangered herself and others. She was unconscious in a vehicle that was stopped, but still running and in gear, in the middle of the traveled part of a public street at nighttime. This not only left Scarbrough vulnerable to injury from traffic accidents, but others as well. Of course, it also left Scarbrough vulnerable to "being victimized by passersby." *Id*. The State presented sufficient evidence from which the trial court could reasonably infer that Scarbrough operated a vehicle in a manner that endangered herself and others.

# Conclusion

[15] The State provided sufficient evidence that Scarbrough operated a vehicle while intoxicated and in a manner that endangered herself and others. I.C. § 9-30-5-2.

Affirmed.

Crone, J., and Brown, J., concur.